THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
James Leroy Logan, Jr., Appellant.
 
 
 

Appeal From Beaufort County
 Curtis L. Coltrane, Special Circuit Court Judge

Unpublished Opinion 2005-UP-639
Heard October 6, 2005  Filed December 15, 2005

AFFIRMED

 
 
 
Samuel Christopher Bauer, of Hilton Head Island; Scott M. Merrifield, of Beaufort; for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton; for Respondent.
 
 
 

BEATTY, J.:  James Leroy Logan, Jr., appeals his conviction in magistrates court for driving under the influence of alcohol (DUI), first offense.  He contends the circuit court erred in failing to reverse the decision of the magistrate denying his motion for a directed verdict.  We affirm.
FACTS
At approximately 2:25 a.m. on October 7, 2002, South Carolina Highway Patrolman R. J. Gannon was dispatched to the scene of a single-vehicle accident at Sea Pines Circle on Hilton Head Island.  When he arrived, Gannon observed a vehicle at a forty-five degree angle lodged in a tree.  As Gannon approached the vehicle, he noticed that another patrolman had broken out the rear passenger window and was trying to assist Logan, who was in the vehicle, until he could receive medical attention.  Gannon noticed a very strong smell of alcoholic beverage coming from the passenger car within the vehicle.  
Once the EMS stabilized Logan, they placed him in an ambulance.  At that point, Gannon asked Logan for some personal information and requested his drivers license.  Gannon claimed that [w]hile talking with Mr. Logan, the smell of alcoholic beverage was even stronger than when he spoke with Logan in the vehicle.  As a result, Gannon advised Logan of his Miranda[1] rights.  In response to Gannons questions, Logan told Gannon that he was on vacation, he had been out on the town for the night, and had been to a couple of local clubs.  Logan, however, could not identify the names of the clubs.  Because he believed Logan had been driving under the influence, Gannon requested a blood sample and informed Logan of his implied consent rights.  According to Gannon, Logan was unable to sign the implied consent form due to his injuries.  Logan declined to submit to a blood test.  Gannon further testified that Logans physical condition prevented EMS from transporting him to a breathalyzer test site.  
At the hospital, Gannon served Logan with a notice of suspension and asked him again about the accident.  Logan only informed Gannon that he was not wearing his seatbelt at the time of the accident.  As a result, Gannon issued Logan a ticket for DUI and for a seatbelt violation.  On the ticket for DUI, Gannon noted in the B.A. Level box that Logan had refused this test.  
On October 22, 2003, a Beaufort County magistrate tried Logans case.  After Gannon testified, Logans counsel moved for a directed verdict for the DUI charge based on two primary grounds:  (1) there was no direct evidence that Logan was driving the vehicle at the time of the accident; and (2) there was no testimony regarding Logans alleged impairment other than the fact that an accident had occurred and Gannon observed an odor of alcoholic beverage.  The magistrate denied this motion as well as Logans renewal of the motion after the defense rested its case without presenting testimony.
In a written order, the magistrate found Logan guilty of DUI and failure to wear a seatbelt.  He ordered Logan to pay a fine of $748 for DUI and $35 for the seatbelt violation.  In reaching his decision as to the DUI charge, the magistrate found:  (1) there was direct evidence that Logan was driving the vehicle at the time of the accident given he was still in the drivers seat at the time the officers arrived at the scene; and (2) Logan was driving under the influence of alcohol to the extent that his driving was impaired based on Gannons testimony that Logan smelled of an alcoholic beverage and Logan told him that he had been to a couple of clubs prior to the accident.
Logan appealed his conviction for DUI to the circuit court.[2]  In his notice of appeal, Logan argued the magistrate erred in declining to direct a verdict because there was no evidence that Logan was driving the vehicle at the time of the accident or that his driving was impaired.
By order dated November 16, 2004, the circuit court affirmed the magistrates decision.  Logan appeals.
DISCUSSION
Logan argues the circuit court erred in failing to reverse his DUI conviction.  Specifically, he contends the State failed to provide sufficient evidence that:  (1) he operated the vehicle involved in the accident; and (2) he was under the influence of alcohol while driving.  As a result, Logan asserts the magistrate should have granted his motion for a directed verdict.  We disagree.
An appellate court may reverse a trial courts denial of a motion for a directed verdict only if there is no evidence to support the courts ruling.  State v. Gaster, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002).  A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged.  State v. McKnight, 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003).  A trial court should deny a motion for directed verdict if there is any direct or substantial circumstantial evidence that reasonably tends to prove an accuseds guilt, or from which his guilt may be fairly and logically deduced.  State v. Horton, 359 S.C. 555, 563, 598 S.E.2d 279, 284 (Ct. App. 2004).
Before a defendant in a criminal case can be required to present a defense, the State must present some proof of the corpus delicti of the crime.  That is, the prosecution must show the actual commission by someone of the particular offense charged.  State v. Smith, 328 S.C. 622, 624-25, 493 S.E.2d 506, 508 (Ct. App. 1997) (citations omitted).    
The corpus delicti of DUI based upon alcohol is:  (1) driving a motor vehicle; (2) within this state; (3) while under the influence of alcohol to the extent that the persons faculties to drive are materially and appreciably impaired.  State v. Russell, 345 S.C. 128, 134, 546 S.E.2d 202, 205 (Ct. App. 2001); see State v. Salisbury, 343 S.C. 520, 524, 541 S.E.2d 247, 249 (2001) (stating the corpus delicti of DUI must be established by proof that a persons ability to drive has been materially and appreciably impaired by the use of alcohol and/or drugs); see also State v. Sheppard, 248 S.C. 464, 466, 150 S.E.2d 916, 917 (1966) (The act of operating a motor vehicle with impaired faculties is the gravamen of a DUI offense.).[3]  All that the first element requires is that the State sufficiently prove that someone drove the automobile.  City of Easley v. Portman, 327 S.C. 593, 596, 490 S.E.2d 613, 615 (Ct. App. 1997).  Under the influence means sufficiently under the influence as to impair the ability of such driver to operate the vehicle with reasonable care.  State v. Kerr, 330 S.C. 132, 143, 498 S.E.2d 212, 217 (Ct. App. 1998).  The question is not whether the defendant is drunk or intoxicated, but whether his condition is such that he could drive with due regard for others and himself.  Id. at 144, 498 S.E.2d at 217-18.
Proof of the corpus delicti does not have to be in the form of direct evidence; it may be established by circumstantial evidence when it is the best evidence obtainable. State v. Osborne, 335 S.C. 172, 180, 516 S.E.2d 201, 205 (1999); State v. Townsend, 321 S.C. 55, 57, 467 S.E.2d 138, 140 (Ct. App. 1996) (While evidence of the corpus delicti in a particular case must be established by the best proof attainable, direct evidence is not essential.  The corpus delicti may be sufficiently proved by presumptive or circumstantial evidence when that is the best obtainable.)(citations omitted).
Turning to the instant case, we find the State presented sufficient circumstantial evidence to establish the corpus delicti of the crime of DUI.  Officer Gannon found an injured Logan inside a vehicle that had just been involved in a single-vehicle accident.  No one else was present in the vehicle.  Gannon, who had been trained as an accident reconstructionist, opined that Logan entered the traffic circle he went straight towards the embankment, up the embankment and on a tree and he came to rest on a tree.  Gannon believed the vehicle went airborne a good six, seven feet before it collided with the tree.  He noted on the DUI traffic ticket that the weather was clear at the time of the accident.  Eyewitnesses to the accident were unavailable at the time of trial.  However, Gannon testified without objection that Logan had been driving the vehicle. [4]   Furthermore, Gannon stated there was a very strong smell of alcoholic beverage in the vehicle and an even stronger smell when he spoke directly to Logan.  Logan also told Gannon that he had been out on the town for the night[5] and had been to a couple of local clubs.  In its order, the circuit court stated that Logan admitted that he had been out on the town at establishments that served alcoholic beverages. [6]   Logans inability to recall the names of the clubs gave rise to the inference that Logan was intoxicated.  Logan also refused to submit to a blood test.  Although Gannon was unable, due to Logans physical condition, to utilize field sobriety tests or a breathalyzer test, he believed Logan had been driving under the influence.  
Based on the foregoing, we hold the magistrate properly denied Logans motion for a directed verdict.  See Portman, 327 S.C. at 596, 490 S.E.2d at 615 (finding the following constituted sufficient evidence to establish the corpus delicti of the offense of DUI:  the Bronco had left the road; it rested up against a tree; the manner in which the Bronco had left the road indicated the drivers operation of the vehicle had been somehow impaired; Portman rested his head against the vehicle; he smelled of alcohol; he slurred his speech, a characteristic associated with one who is intoxicated; and the investigating officer believed Portman was under the influence of alcohol); see also State v. Gilliam, 270 S.C. 345, 347, 242 S.E.2d 410, 411 (1978) (holding magistrate properly denied defendants motion for a directed verdict on the charge of DUI where operator of a tow truck found defendant alone on the passenger side of a wrecked automobile, the accident had occurred approximately fifteen minutes prior to the tow truck operators arrival, the operator testified defendant smelled of alcohol and appeared to be under the influence, there was testimony that defendant was rambling when questioned at the hospital where he received treatment, defendant admitted he had been driving at the time of the accident, and an open container of alcohol was found in the automobile); State v. McCombs, 335 S.C. 123, 127, 515 S.E.2d 547, 549 (Ct. App. 1999) (finding trial court properly denied defendants motion for a directed verdict on the charge of DUI where officer discovered defendant at the scene of an automobile accident in an apparent intoxicated state, defendant smelled of alcohol and failed his breathalyzer, and officer believed defendant was impaired even though officer could not safely conduct field sobriety tests).
Accordingly, the circuit courts decision affirming Logans magistrate court conviction for DUI is
 AFFIRMED.
GOOLSBY, J., concurs, and SHORT, J., dissents in a separate opinion.
SHORT, J., dissenting in part:  After a careful analysis of the facts in this case, I conclude there was no evidence presented that reasonably tends to prove Logan was under the influence of alcohol to an extent that his ability to drive was materially and appreciably impaired; therefore, I must respectfully dissent.  
In reviewing a trial courts denial of a criminal defendants motion for a directed verdict, the appellate court must view the record in the light most favorable to the State and remember the granting or denial of a motion for a directed verdict turns on the existence of evidence not its weight.  State v. Brown, 267 S.C. 311, 316, 227 S.E.2d 674, 677 (1976).  A motion for a directed verdict should be denied if there is any evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced.  Id.      
It is unlawful, in South Carolina, for a person to drive a motor vehicle if he is under the influence of alcohol to an extent that his ability to drive is materially and appreciably impaired.  S.C. Code Ann. § 56-5-2930 (1) (Supp. 2004).  The cases cited by the majority all contain traditional indicia of material and appreciable impairment due to the consumption of alcohol.  Due to the absence of such evidence in the case at bar, it should be distinguished and Logans motion for a directed verdict should have been granted.    
The first case cited by the majority in support of the magistrates denial of Logans motion for a directed verdict is City of Easley v. Portman, 327 S.C. 593, 490 S.E.2d 613 (Ct. App. 1997).  The Portman case, unlike the case at bar, involved an extrajudicial confession and centered on corpus delicti.  Id. at 595, 490 S.E.2d at 614.  Therefore, while Portman may be enlightening, it does not control the case sub judice.  In Portman, we found the following was sufficient evidence to establish the corpus delicti of the offense of DUI: the Bronco had left the road; it rested up against a tree; the manner in which the Bronco had left the road indicated the drivers operation had some how been impaired; Portman rested his head against the vehicle; he smelled of alcohol; he slurred his speech, a characteristic associated with one who is intoxicated; and the investigating officer believed Portman was under the influence of alcohol.  Id. at 596-97, 490 S.E.2d at 615.  At the scene of the wreck, Portman stated, I was driving the vehicle.  Im drunk, take me to jail.  Id. at 595, 490 S.E.2d at 614.  
The majority also discusses State v. Gilliam, 270 S.C. 345, 242 S.E.2d 410 (1978).  In Gilliam, our supreme court held that the defendants motion for a directed verdict had been properly denied where a tow truck driver found the defendant alone in a car that had been in a single car accident fifteen minutes earlier; the tow truck driver testified that the defendant smelled like alcohol and appeared to be under the influence; the defendant was rambling at the hospital while receiving treatment; the defendant admitted he had been driving at the time of the accident; and an open container of alcohol was found in the car.  Id. at 347, 242 S.E.2d at 411.        
The final case cited by the majority is State v. McCombs, 335 S.C. 123, 515 S.E.2d 547 (Ct. App. 1999).  In McCombs, we held that the defendants motion for a directed verdict had been properly denied where an officer arrived on the scene of a car crash; knew and recognized the defendant as the owner of the vehicle; concluded the defendant had been the driver; testified that the defendant had bloodshot eyes, slurred speech, and smelled of alcohol, and based on these observations, the officer believed the defendant was under the influence; the defendant admitted that he was the driver of the vehicle and had been drinking; and the defendants subsequent breathalyzer test reflected a blood-alcohol level of .16 percent.  Id. at 126, 515 S.E.2d at 548.   
Like the defendants in the cases cited by the majority, Logan was involved in a car crash and smelled of alcohol.  However, the records in the other cases contained evidence showing traditional indicia of material and appreciable impairment due to the consumption of alcohol such as slurred speech, bloodshot eyes, rambling, testimony that the defendant appeared to be under the influence of alcohol, or an excessive blood-alcohol level.  There was no evidence presented at Logans trial to show that he was materially and appreciably impaired due to the consumption of alcohol.  Officer Gannon testified that Logan drove straight through a traffic circle, his car left the road and hit a tree, he smelled like alcohol, he had been out to a few local clubs but could not recall their names, and that he refused a blood test.  He did not provide any testimony that the appellant was unsteady on his feet, slurred his speech, or was incoherent or otherwise possessed any of the generally accepted visible characteristics often associated with persons who are under the influence of alcohol.  
Automobile accidents happen for many different reasons, and often occur even when drivers are not impaired.  I am not persuaded that there is a link between a persons inability to remember the names of clubs and the consumption of alcohol, especially when the person is not from the area.  A refusal to submit to a blood test and the odor of alcohol may be evidence from which it can be inferred that a person has been drinking alcoholic beverages, but alone does not show material and appreciable impairment.    
An automobile wreck accompanied only by the smell of alcohol, a refusal of a blood test, and the drivers inability to remember the names of clubs that he had visited is not evidence from which material and appreciable impairment may fairly and logically be deduced.  See Brown, 267 S.C. at 316, 227 S.E.2d at 677 (a defendants motion for a directed verdict should be granted if the evidence presented merely raises a suspicion of guilt).   Therefore, the state failed to present any evidence showing material and appreciable impairment, and Logans motion for a directed verdict should have been granted.

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).
[2]   Logan did not appeal his conviction for violating the seatbelt law.
[3]   Section 56-5-2930 of the South Carolina Code of Laws outlines the offense of DUI as follows:

It is unlawful for a person to drive a motor vehicle within this State while:
(1) under the influence of alcohol to the extent that the persons faculties to drive are materially and appreciably impaired;
(2) under the influence of any other drug or a combination of other drugs or substances which cause impairment to the extent that the persons faculties to drive are materially and appreciably impaired; or
(3) under the combined influence of alcohol and any other drug or drugs or substances which cause impairment to the extent that the persons faculties to drive are materially and appreciably impaired.

S.C. Code Ann. § 56-5-2930 (Supp. 2004).
[4]   Although we recognize that Logans counsel objected at other points during Gannons testimony regarding whether Logan was driving, there was one instance where he did not raise an objection.  Thus, we may take this testimony into consideration in reaching our decision.
[5]   Out on the town has been explained to mean:  When you go out partying and having fun at public places like bars, restaurants, and theatres, you are out on the town.  This definition may be found at www.GoEnglish.com.
[6]     Logan did not challenge this finding.  Thus, it is the law of the case. See In re:  Morrison, 321 S.C. 370, 371, 468 S.E.2d 651, 653 (1996) (stating an unappealed ruling is the law of the case); Haselden v. Haselden, 347 S.C. 48, 59, 552 S.E.2d 329, 334 (Ct. App. 2001) (noting unappealed finding is the law of the case).